James F. AITKEN, Plaintiff–Appellant,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.

No. 04–2209.

United States Court of Appeals, Seventh Circuit.

Submitted Sept. 23, 2004.*

Decided Sept. 24, 2004.

James F. Aitken, Peru, IL, pro se.

Thomas P. Walsh, Office of the United States Attorney, Chicago, IL, for Defendant–Appellee.

Before EASTERBROOK, DIANE P. WOOD, and EVANS, Circuit Judges.

ORDER

James Aitken applied for Disability Insurance Benefits in June 2000, based on back and foot problems that began in the mid–1980s. Aitken's claim was denied initially and upon reconsideration by an administrative law judge, who concluded that Aitken was not disabled at any point between 1985 and 1991, the period that he met the insurance requirements of the Social Security Act. After the Appeals Council denied review, the ALJ's ruling became the final decision of the Commissioner of Social Security. The district court affirmed, and Aitken appeals. We affirm.

Aitken, who was born in 1936, complains of lower back pain stemming from injury and over-exertion when he was a dock worker in the mid 1980s. Doctors have characterized his back problems as mild to moderate. The most comprehensive examination before Aitken's date last insured, March 31, 1991, took place between May and June 1986 at the Mayo Clinic. There, an orthopedist opined that Aitken's back pain was likely caused by secondary to mild degenerative arthritis and was not related to any particular injury or incident. A neurologist found no evidence of neurological disease and noted only a mild limitation of the range of motion of Aitken's cervical spine. Aitken also visited a chiropractor intermittently over the years; tests from a 1986 visit indicate a normal

dorsolumbar range of motion and a slightly impaired cervical range of motion.

In addition to his back injuries, Aitken underwent surgery on both feet in November 1985 to correct four cases of "hammertoe" deformity—an unnatural bending of the toe at the middle joint that is frequently caused by poorly fitting shoes. Since his surgery, he has not worked regularly, although he is an occasional substitute teacher and a nominal officer of a restaurant and bar business.

The only medical examination in the record pertaining to Aitken's foot problems, which were allegedly caused by the surgery, took place in November 2002, eleven years after Aitken's date last insured. Dr. Wessels, the podiatrist who performed Aitken's hammer-toe surgery in 1985, conducted tests that suggested neurological disorder and noted the possibility of peripheral neuropathy of both feet. Dr. Wessels opined that these symptoms stemmed from Aitken's lower back injury rather than his foot surgery.

The ALJ applied the five-step analysis of 20 C.F.R. § 404.1520(a)(4)(i)—(v) to find that Aitken had not engaged in substantial gainful employment since the alleged onset of his disability (step one); that his injuries were severe impairments (step two); and that the injuries did not qualify individually or in sum as listed impairments (step three). After determining that Aitken retained the residual functional capacity ("RFC") to perform light work, the ALJ concluded that he could still perform his past relevant work (step four), and that he could perform other work in the national economy (step five).

Aitken's brief on appeal, which is largely devoid of legal argument and supporting authority, nearly fails the requirements for appellants' briefs found in Fed. R.App. P. 28(a)(9). *See Anderson v. Hardman*, 241 F.3d 544 (7th Cir.2001). Nevertheless, generously construing his pro se brief, *id.* at 545, we can discern at least one possible issue for review.

Aitken challenges the ALJ's failure to give controlling weight to Dr. Wessels's observations from 2002 of neurological disease in Aitken's feet—a disorder that Wessels opined should qualify Aitken for disability. The ALJ must weigh conflicting evidence from medical experts and attribute greater weight to the most pertinent evidence. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir.2004). Here, the ALJ stated that he gave little weight to Dr. Wessels's findings because they were not supported by evidence in the record of neurological disease during the covered period, which ended in 1991. Indeed, the only evidence in the record regarding Aitken's neurological condition during this period is a comprehensive physical evaluation report from the Mayo Clinic in 1986, which revealed no signs of neurological disorder.

AFFIRMED.